SARAH M. HOPE, RESPONDENT, v. THE MACCABEES, A CORPORATION, APPELLANT.

Submitted July 9, 1917—Decided November 27, 1917.

1. A merely incorrect statement of one's age in an application for membership in a beneficial order, without more, cannot be said, as a matter of law, to be willfully false, even if untrue in fact.
2. Where the laws of a beneficial order provide that should a member engage in certain prohibited occupations or become intemperate in the use of intoxicating liquors, his benefit certificate shall become null and void, and the testimony did not show conclusively that the member was so engaged or so became intemperate, a refusal to direct a verdict for defendant in a suit on the beneficial certificate was rightly denied, as the questions were for the jury to decide.
3. Although it is the province of the court to construe a written instrument, yet, where the effect of such instrument depends not merely on its construction and meaning, but upon collateral facts *in pais* and extrinsic circumstances, the inferences of fact to be drawn from them are to be left to the jury.

On appeal from the Supreme Court.

For the appellant, *Lindabury, Depue & Faulks.*

For the respondent, *Heyman & Heyman.*

The opinion of the court was delivered by.

WALKER, CHANCELLOR. This is an appeal from the Supreme Court, the questions raised being presented by an exception to the trial judge's refusal to grant defendant's motion for the direction of a verdict in its favor and upon certain exceptions to the trial judge's charge to the jury.

On February 28th, 1897, William J. Golden applied for membership in the appellant corporation, which is a fraternal beneficial association. He was accepted and a life certificate for $2,000 was issued to him. Thereafter on February 22d, 1916, he surrendered his life benefit certificate and in lieu thereof a life benefit permanent and total dis-

ability certificate was issued to him in which the respondent was named as beneficiary. Appellant paid to Golden during his lifetime on account of the last-mentioned certificate $150. He died March 22d, 1916. Respondent brought her suit to recover $1,850, being the balance claimed on account of the last-mentioned certificate.

Appellant contested the claim upon the ground that Golden had made false statements in his application for membership; that he had engaged in prohibited occupations, and had become intemperate in the use of intoxicating liquors, contrary to the provisions of the laws of the appellant order, by reason of which his benefit certificate had become null and void. The plaintiff had a verdict, and defendant appealed.

The questions here involved are the following:

1. Did Golden falsely state his age? In his application for membership in the defendant corporation he stated that he was born at Roundout, N. Y., February 22d, 1868, and declared that the answers he had given to the questions propounded to him were fair and true answers, and agreed that those statements, together with those made by the examining physician, and the laws of the order, then in force and that might be thereafter adopted, should form the basis of his contract for beneficial membership; that any untrue or fraudulent answers, any suppression of facts in regard to his health, age, occupation, &c., should vitiate his benefit certificate and forfeit all payments made thereon; that the application and the laws of the order then in force or that might thereafter be adopted were made a part of the contract and he, for himself and his beneficiary, agreed to conform to and be governed thereby. There was proof in the case to the effect that Golden was born February 21st, 1864, instead of February 22d, 1868, and that, therefore, he was four years older than he stated he was.

It is to be observed that there is a provision in the application that if a member understates his age in good faith, and without any intention to deceive, he shall not thereby forfeit his certificate, &c.

We fail to find any evidence in the case which would have justified the trial judge in saying, as matter of law, that Golden had misrepresented his age with intent to deceive, and that question was therefore properly left to the jury.

The appellant contends that the statements and answers to questions about age, occupation and habits in the application, are warranties, and, being false, preclude recovery on the certificate. The respondent denies that the statements are warranties, but concedes that their untruth would affect the validity of the certificate, if made falsely and with intent to deceive. This is undoubtedly the law of this state, and they would not have to be warranties if they were made *mala fides*. *McVey* v. *Order of United Workmen*, 53 N. J. L. 17.

The appellant relies upon *Holland* v. *Chosen Friends*, 54 N. J. L. 490. But that case and the one at bar are clearly to be distinguished. In the Holland case the applicant for membership in a beneficial order was asked if he were engaged in the sale or manufacture of wine, beer or distilled liquors. This question he answered in the negative. It was proved on the trial that when he made the application he was employed as a bartender, and continued so to be down to within a few days of his death. In that case the plaintiff had a verdict which was set aside on rule to show cause, and Judge Depue, writing the opinion, observed (at *p.* 497) that the proof was plenary that the certificate there under consideration was obtained by positive fraud of such a character as ought in morals, as well as in law, to defeat the fraudulent purpose, and that such must be the result on well settled legal principles.

Some people do not know how old they are and others forget their age. A merely incorrect statement of one's age, without more, cannot be said, as matter of law, to be willfully false, even if untrue in fact. In the case before us we have the bare misstatement without more, and this in and of itself is certainly not plenary proof of willfully false and fraudulent misstatement.

2. Appellant contends that the certificate sued on is null and void because after becoming a member of the order in 1897 Golden continuously engaged in prohibited occupations up to the year 1914. In his application for membership on February 28th, 1897, he stated that his occupation was that of a tobacco salesman. By the laws of the order then in force it was provided that no person should be eligible for membership in the order as a beneficiary who was engaged either as a principal, agent or servant in the manufacture or sale of spirituous, malt or vinous liquors, and should any beneficial member engage in any of those occupations after his admission, his benefit certificate should become null and void and that he should stand suspended from all rights to participate in the benefits of the order. That provision was amended in 1907 to provide that saloon keepers, bartenders, liquor salesmen or collectors for liquor houses and breweries or hotels, and all persons employed in or about saloons and bars in hotels and restaurants should not be admitted to the association.

The testimony does not show conclusively that Golden was engaged in the liquor business in any capacity at the time he joined the order, and there was testimony to show that at that time he was a tobacco salesman, as stated in his application. He had been in the liquor business as proprietor of a saloon prior to 1897, but it was not shown that he was so engaged afterwards—at least not conclusively.

A man named Burr testified that he was in the saloon business for a number of years, operating a number of saloons; that he employed Golden in connection with them to take care of money from the cash registers and to collect the rent of buildings and described Golden as a special man employed to take care of his interests, as he did not know anything about the saloon business. It does not appear when Golden became the employe of Burr, but it is shown that he continued in the employment until about two years prior to his death, and during those two years he did nothing. On this state of facts it cannot be said, as matter of law, that Golden was

engaged in any capacity in the manufacture or sale of any kind of liquors or that he was a saloon keeper, bartender or liquor. salesman. Nor does it conclusively appear that he was a collector for a liquor house, brewery or hotel. That may mean a man who collects money due to liquor houses, breweries or hotels, and not one who collects, or, rather, takes up moneys made in and which are the property of the owner of such places, who is the employer of the collector, if he may in strictness be called a collector. Nor does it conclusively appear that Golden was a person employed in or about saloons and bars in hotels. Such a description is at least susceptible of being understood as meaning constant work and not casual employment in or about such places. Then, too, it may be said that merely occasionally engaging in the prohibited occupations does not constitute such engagement therein as is prohibited by the contract. In fact this was charged by the trial judge, who added that in order to constitute a defense it must be proved that the prohibited occupation was the usual work or employment of the deceased. It was argued that this was error. But we find it unnecessary to decide the question, because, if the charge in this respect were erroneous, such error was rendered harmless by the 391st by-law of the defendant corporation, which provides that no benefit shall be paid on account of the death or disability of a member while engaging in any prohibited occupation. And it is conceded that the deceased member. was not so engaged at the time of his death.

Although it is the province of the court to construe a written instrument, yet, where the effect of such instrument depends, not merely on its construction and meaning, but upon collateral facts *in pais* and extrinsic circumstances, the inferences of fact to be drawn from them are to be left to the jury. *Etting* v. *United States Bank*, 24 *U. S.* 59; 6 *L. Ed.* 419. See, also, *West* v. *Smith*, 101 *U. S.* 263, 270; 25 *L. Ed.* 812.

3. It is next objected that Golden's benefit certificate became void by reason of his intemperate use of intoxicating

liquors. The laws of the appellant order at the time Golden became a member provided for the expulsion or suspension of one who should become intemperate in the use of intoxicating liquors, and in July, 1904, the laws were amended to provide that if any member should become intemperate in the use of intoxicating liquors * * * he should thereby forfeit all rights as a member of the association and his certificate should become absolutely null and void, and the payment by him of any rates, assessments, dues or fines, or the acceptance thereof by the order, should not waive any such forfeiture; and these provisions continued in force until after Golden's death. It was proved that Golden was occasionally intoxicated, but at best for the appellant it was a jury question as to whether he was intemperate in the use of intoxicating liquors within the meaning of the laws of the order. To be "intemperate" is to indulge excessively or inordinately. See *Webster's Int. Dic.*

Upon this whole matter we are clearly of opinion that the case was one for the jury and that the motion for direction of a verdict for the defendant was properly denied and that the exceptions to the charge of the judge are not well founded. Let the judgment be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, JJ. 10.

*For reversal*—BERGEN, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 5.